UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VINCENT M. VENTIMIGLIA, et al., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:07CV01759 ERW |
| ) | |
| AT&T YELLOW PAGES, et al., ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Temporary Restraining Order [doc. #2], Defendants' Motion to Dismiss [doc. #34], Defendants' Motion to Quash Plaintiffs' First Discovery Request [doc. #36], Plaintiffs' Motion for Extension of Time [doc. #37], Defendants' Motion for Sanctions [doc. #41], Plaintiffs' Motion for Order to Show Cause [doc. #46], Plaintiffs' Request for Temporary Restraining Order [doc. #47] and Plaintiffs' Request for Third Amended Complaint by Interlineation [doc. 48].

## I. BACKGROUND

Plaintiffs Vincent Ventimiglia and Debbie Ventimiglia (collectively "Plaintiffs") filed suit against AT&T, Dan Walsh, Vince Lopiccolo, Francine Dugger, Southwestern Bell Yellow Pages, R.R. Donnelley,[1] G.T.E. Directories Corporation, Yellow Pages Publishing Association, Verizon Corporation, L.M.Berry Company, Central Division, Century Tel, Inc., and R.H. Donnelly (collectively "Defendants"), alleging violations of a number of federal statutes including the Sherman Act, Clayton Act, Robinson-Patman Act, the Federal Trade Commission Act, the 1964

---

[1]This Defendant was terminated on December 21, 2007.

1

Civil Rights Act, as well as alleging breach of contract. All of the allegations arise from a contract that was entered into between Plaintiffs and Defendant AT&T for advertising services. By leave of the Court, Plaintiffs filed a Second Amended Complaint on December 20, 2007. Defendants subsequently filed a motion to dismiss Plaintiffs' Second Amended Complaint. Also pending before the Court is Defendants' Motion for Sanctions, and Defendants' Motion to Quash Plaintiffs' first discovery requests, as well as Plaintiffs' Motion for a temporary restraining order, Plaintiffs' Motion for Extension of Time, Plaintiffs' Motion to Show Cause, and Plaintiffs' Request to file a Third Amended Complaint. The Court will address all pending motions at this time, beginning with Defendants' Motion to Dismiss, as a ruling in Defendants' favor on this motion will moot a number of the remaining pending motions.

## II. MOTION TO DISMISS

### A. LEGAL STANDARD

A complaint shall not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support" of a claim entitling him or her to relief. *Breedlove v. Earthgrains Baking*, 140 F.3d 797, 799 (8th Cir. 1998) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In an order on a motion to dismiss, the court must assume that all allegations in the complaint are true and construe all reasonable inferences in the plaintiff's favor. *Hafley v. Lohman*, 90 F.3d 264, 267 (8th Cir. 1996) (citing *McCormack v. Citibank*, N.A., 979 F.2d 643, 646 (8th Cir. 1992)). The complaint "should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. However, a complaint should be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

"While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant 'set out *in detail* the facts upon which he basis his claim,' Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 n.3 (2007) (citing *Conley*, 355 U.S. at 47) (emphasis added by *Bell Atlantic Corp.*). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 127 S.Ct. at 1964-65 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alterations in original)). Furthermore, "[t]he Court need not accord the presumption of truthfulness to any legal conclusions, opinions or deductions, even if they are couched as factual allegations." *Davis v. Bemiston-Carondelet Corp.*, 2005 WL 2452540, at *5 (E.D. Mo. Oct. 4, 2005) (citing *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.*, 127 S.Ct. at 1965.

### B. DISCUSSION[2]

Plaintiffs have asserted numerous claims, which can generally be broken down into three categories: anti-trust violations; violation of the 1964 Civil Rights Act; and Breach of Contract. The Court will address each of Plaintiffs' allegations in turn.

#### 1. Anti-Trust Violations

---

[2]The Court will address each of Plaintiffs' allegations in the order addressed by Defendants in their motion to dismiss. The Court notes that Plaintiffs utilized Defendants' format in their response, and therefore, it appears to be the most logical approach to ensure that all of Plaintiffs' claims are addressed. The Court also is cognizant of the liberal standard that is to be used when reviewing a *pro se* litigants complaint, however, this does not excuse compliance with the federal rules and other pleading requirements. *Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983) ("Although pro se pleadings are to be construed liberally, pro se litigants are not excused from compliance with relevant rules of the procedural and substantive law.").

### a. Sherman Act

The first claim by Plaintiffs is that Defendants violated the Sherman Act, 15 U.S.C. § 1-7. This includes claims by Plaintiffs of conspiracy, monopolization, attempted monopolization, and price fixing. Defendants dispute that Plaintiffs have alleged any facts which are sufficient to support an allegation under the Sherman Act, on any of the bases asserted.

Plaintiffs' first allegation is under Section 1 of the Sherman Act, alleging conspiracy. That section states, in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. In order to succeed on a claim under this section, Plaintiff must show that Defendants anti-trust conduct stemmed from an agreement, tacit or express, among competitors, that had an unreasonable restraint on trade. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 775 (1984); *see also Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537 (1954) ("The crucial question is whether respondents' conduct toward petitioner stemmed from independent decision or from an agreement, tacit or express."). No Section 1 liability can be found when the asserted restraints on trade result from the actions of a single entity, or that entities subsidiaries; Section 1 requires a contract, combination, or conspiracy between different entities. *Copperweld Corp.*, 467 U.S. at 775.

Plaintiffs have not alleged facts which satisfy the requirements articulated by the Supreme Court. As an initial matter, Plaintiffs have failed to allege conduct against more than one entity; all of the alleged illegal conduct is asserted against Defendant AT&T. While Plaintiffs have named numerous other parties as Defendants, they have failed to allege any conduct by these Parties to support liability. *See Copperweld Corp.*, 467 U.S. at 775. Furthermore, even were

Plaintiffs able to show that the Defendants constituted separate entities, Plaintiffs have failed to allege facts that could support a finding of an agreement between any of the Defendants to engage in anti-competitive behavior. Plaintiffs specifically state in their complaint that they received a lower price for the same or superior services from AT&T's competitor; negating any allegation of anti-competitive behavior. For these reasons, Plaintiffs' claim under Section 1 of the Sherman Act are dismissed with prejudice.

The Court next addresses Plaintiffs allegation that Defendants' actions violate Section 2 of the Sherman Act, on the basis that Defendants monopolized or attempted to monopolize. Section 2 provides that: "every person who shall monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce . . . shall be deemed guilty of a felony." 15 U.S.C. § 2.

> The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.

*United States v. Grinnell Corp.*, 384 U.S. 563, 570-571 (1966). Monopoly power is further defined as "the power to control prices or exclude competition." *Id.* at 571. Plaintiffs have failed to allege facts which meet these requirements. Plaintiffs have not asserted that Defendants have the power to control prices or exclude the competition. As stated by Plaintiffs, Plaintiffs received a better rate from AT&T's competitor, Yellow Book, for the same advertising space. Nor have Plaintiffs alleged facts that would satisfy the second prong of the test articulated by the Supreme Court; even if Defendants have a predominant presence in the market, Plaintiffs have not alleged that this is the result of willful acquisition or maintenance as opposed to growth or development as a result of superior product, business acumen, or historic accident. *Id.* Therefore, the Court

concludes that Plaintiffs have failed to state a claim under Section 2 of the Sherman Act on the basis of monopolization.

Plaintiffs also assert a violation of Section 2 on the basis of attempted monopolization. "[T]o demonstrate attempted monopolization a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). "In order to determine whether there is a dangerous probability of monopolization, courts have found it necessary to consider the relevant market and the defendant's ability to lesson or destroy competition in that market. The anticompetitive conduct alleged by Plaintiffs is that Defendants engaged in tactics that enticed individuals to use Defendants services by offering a low introductory rate, and then steadily increased the price of that service during the term of the relationship. These allegations are insufficient to show that this is a predatory or anti-competitive conduct. As evidenced by the facts of this case, when Defendants prices became more than Plaintiffs were willing to pay, they engaged a separate advertising company to place adds in their yellow pages. Furthermore, Plaintiffs have failed to allege any facts that would support a finding that there was a dangerous probability of achieving a monopoly. The Court concludes that the facts asserted by Plaintiffs are insufficient to support a claim for relief under Section 2 of the Sherman Act on the basis of attempted monopolization.

Plaintiffs' third allegation under Section 2 of the Sherman Act is that Defendants were involved in predatory price fixing. In order to pursue an action for predatory pricing, Plaintiffs must show that Defendants acquired and maintained a noncompetitive position. *Henry v. Choloride, Inc.*, 809 F.2d 1334, 1345 (8th Cir. 1987). "In essence, *Matsushita* imports a rule of impossibility into predatory pricing cases: if the defendant could not have captured the market, its

conduct cannot be predatory, no matter what its 'intent.'" *Id.* at 1345 (citing *Mitsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). Plaintiffs have not alleged facts that would support such a showing. The only allegations asserted is that Defendants gave Plaintiffs a low price when they first began their business relationship, and that the prices increased. Plaintiffs also allege that one competitor company during that time went out of business. There is no evidence that Defendants original low price was substantially below the market price, or that such a price would cause the Defendants to lose money that they hoped to recapture in the future, in other words, that they were maintaining a noncompetitive position. Plaintiffs allegations show only that Plaintiffs initial price was less expensive than the price charged following multiple changes to the Parties' original contract. There is no allegation that the initial price was below the market average, or that it was a company policy to charge lower rates to put competitors out of business. Without any allegations of company losses with the expectation that they would recapture these losses in the future, Plaintiffs cannot succeed on a claim that Defendants violated Section 2 of the Sherman Act on the basis of price-fixing.

Having reviewed each of the asserted bases for Plaintiffs' claim of a Sherman Act violation, the Court concludes that Defendants are entitled to judgment on each claim. Therefore, the Court grants Defendants motion to dismiss each Sherman Act claim.

### b. Robinson-Patman Act[3]

The Court next looks at Plaintiffs' allegations that Defendants violated the Robinson-Patman Act. The Robinson-Patman Act states in pertinent part, that:

---

[3]In Defendants motion to dismiss, they reference both the Clayton Act and the Robinson-Patman Act. The Clayton Act was amended by the Robinson-Patman Act, now codified at 15 U.S.C. §§ 13, 13a, 13b, and 13c. The Court will refer to the Robinson-Patman Act.

> It shall be unlawful for any person engaged in commerce . . . to discriminate in price between different purchasers of commodities of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them . . ..

15 U.S.C. § 13(a). The definition of commodities has been limited to "products, merchandise or other tangible goods." *TV Signal Co. of Aberdeen v. American Telephone & Telegraph Co.*, 462 F.2d 1256, 1259 (8th Cir. 1972). Services are not generally included in this definition. *Morning Pioneer, Inc. v. Bismarck Tribune Co.*, 493 F.2d 383, 389 n.11 (8th Cir. 1974). The question before the Court is whether the sale of advertising in a final published product is a commodity. The Eighth Circuit in *Morning Pioneer, Inc.* found that while a number of services may go into the production of a newspaper, the final finished product constitutes a commodity under the Robinson-Patman Act. *Id.* The Second Circuit in *Ambook Enterprises v. Time Inc.*, explicitly held that newspaper advertising does not constitute a commodity under the terms of the Robinson-Patman Act. 612 F.2d 604, 610 (2nd Cir. 1979) ("[T]he term 'commodities,' in the ordinary use of language, would not be taken to include newspaper advertising."). The Court concludes that the sale of yellow pages advertising constitutes a service and not a commodity within the meaning of the statute. While the final yellow pages product may constitute a commodity, the sale of advertising space does not.

The Court also notes that Plaintiffs cite to 15 C.F.R. 240.14 in support of their claim under this act. This section provides a defense to seller's charged with discrimination on the basis that they believe an offer is reasonably necessary to meet a competitors offer. 15 C.F.R. 240.14. Plaintiffs allege that this provision supports their claim under the statute at issue because Defendants rates are higher than their competitors. Such an allegation does not support a claim under the Robinson-Patman Act for price discrimination, even were the sale of advertising

8

considered a commodity, which it is not. Therefore, Plaintiffs claim under the Robinson-Patman Act is dismissed.

### c. Federal Trade Commission Act

Finally, the Court addresses Plaintiffs claims under the Federal Trade Commission Act ("FTCA"). Defendants assert that Plaintiffs claims under this provision of federal law must fail, because there is no private right of action under the FTCA. *Morrison v. Back Yard Burgers, Inc.*, 91 F.3d 1184, 1187 (8th Cir. 1996) ("Our denial of plaintiffs' attempt to support their state fraud claim with evidence of a knowing violation of 16 C.F.R. § 436.1 is consistent with other circuit's [sic] holdings that there is no private cause of action for violations of the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.*"); *see also Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973) ("The statutory provision invoked by the appellants [Section 5(a)(1) of FTCA] in this case provided them with no remedy, either explicitly or implicitly."). As there is no private right of action under the FTCA, Plaintiffs' claims cannot proceed. Therefore, Plaintiffs claims under the FTCA are dismissed.

### 2. CIVIL RIGHTS CLAIMS

Plaintiffs have alleged a violation of the 1964 Civil Rights Act on the basis that Defendants canceled Plaintiffs' contract with Defendant AT&T, and Defendant AT&T does not cancel other customers contracts. Plaintiffs also assert a violation of Fourteenth Amendment's right to equal protection. Defendants argue that Plaintiffs have failed to state a claim because they have failed to allege that they are a member of a protected class.

The Civil Rights Act has a specific function: "It protects the equal right of 'all persons within the jurisdiction of the United Sates' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (citing 42 U.S.C. §

1981(a)). The Civil Rights Act prohibits discrimination on the basis of race in the making and enforcing of contracts. Plaintiffs have failed to allege facts that could support relief under this provision. Plaintiffs do not allege that they are a member of a racial minority, rather they base their allegations on Defendants alleged discrimination between different groups of people, for example, charging attorneys more than other customers. This does not support a claim under either the Civil Rights Act of 1964, or the equal protection clause of the Untied States Constitution. Therefore, Plaintiffs claim on this basis is dismissed.

### 3. CONTRACT CLAIMS

Without addressing the adequacy of Plaintiffs' state law contract claim, the Court declines to exercise jurisdiction over this claim. Generally, this Court only has jurisdiction to adjudicate claims based on either federal subject matter jurisdiction or diversity jurisdiction. 28 U.S.C. §§ 1331 &1332. However, "a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them all in one place." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349 (1988); *see also* 28 U.S.C. § 1367 (codifying this rule of supplemental jurisdiction). Upon a determination that Plaintiffs' federal claims fail for failure to state a claim, the Court has discretion to either exercise supplemental jurisdiction, or dismiss without prejudice, Plaintiffs' attendant state law claims. *see Miner v. Local 373*, 2008 WL 199827, *7 (8th Cir. 2008). The Court, in its discretion, dismisses Plaintiffs' breach of contract claim, without prejudice. Allowing Plaintiffs to re-file this claim in state court in the future.[4]

---

[4]This does not in anyway address the merits of Plaintiffs' breach of contract claim, nor does it address the prudence of filing this case in state court. The Court simply declines to exercise jurisdiction.

## C. CONCLUSION

The Court has reviewed Plaintiffs' complaint, and has given Plaintiffs every possible inference in reviewing the alleged causes of action, however, the Court can find no basis upon which Plaintiffs can be afforded relief. Plaintiffs have potentially alleged a valid breach of contract claim, based on the allegations that Plaintiffs had a contract with Defendant AT&T that was valid through 2008, and that Defendants changed the terms of that contract unilaterally. However, such a claim is not based upon federal subject matter jurisdiction, and therefore is not properly brought in federal court. Furthermore, because Plaintiffs remaining claims all fail to assert a basis for relief,the Court declines to exercise supplemental jurisdiction over the contract claim. The Court also notes that in Plaintiffs' Second Amended Complaint, Plaintiffs named a number of other corporate entities as Defendants, including, Southwestern Bell Yellow Pages, G.T.E. Directroies Corporation, Yellow Pages Publishing Association, Verizon Corporation, L.M. Berry Company, Central Division, Century Tel, Inc., and R.H. Donnelly. Plaintiffs have not alleged any specific facts against these Defendants, under any of the Counts addressed above, and therefore all claims against these Defendants are also dismissed. For these reasons, Defendants Motion to Dismiss is granted, and all of Plaintiffs' claims are dismissed.

## III. MOTION FOR SANCTIONS

Defendants' have also filed a motion for sanctions against Plaintiffs pursuant to Federal Rule of Civil Procedure 11(b). Plaintiffs dispute that there is any basis for sanctions, arguing that they have filed a valid claim for relief under federal law, and therefore sanctions are inappropriate.

Rule 11(b) states:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is

> certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, - (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . ..

Fed. R. Civ. P. 11(b)(1)-(3). "Rule 11 allows the district court to impose sanctions whenever a plaintiff has filed a frivolous lawsuit." *Kurkowski v. Volcker*, 819 F.2d 201, 203 (8th Cir. 1987). This rule applies whether the plaintiff is represented by counsel or whether the plaintiff is *pro se*. *Id.* at 204. The Eighth Circuit stated that "we recognize that pro se complaints are read liberally, but they still may be frivolous if filed in the face of previous dismissals involving the exact same parties under the same legal theories." *Id.*

The Court does not believe that sanctions are appropriate in the case before the Court. While Defendants are correct that Plaintiff has failed to allege any facts to support his numerous anti-trust violations, this alone does not warrant the imposition of sanctions. A reading of Plaintiffs' complaint shows a lack of understanding of the requisite elements of a claim under each of the anti-trust provisions referenced. However, it does not show that Plaintiffs filed the pending action solely for the purpose of harassment, or to purposely increase Defendants' legal cost. *See* Fed. R. Civ. P. 11(b). Plaintiff had a dispute regarding the rates that he was being charged for advertising by Defendant AT & T, his numerous legal theories were without merit, but his motive has not been shown to have been improper. Furthermore, while Defendants present evidence of a number of previous lawsuits filed by Plaintiffs, they have not shown that Plaintiffs previously filed a claim involving the same Defendants and the same legal theories. Therefore, the Court concludes that sanctions are not appropriate in this case.

## IV. MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs' Motion for a Temporary Restraining Order is essentially a revised complaint. This Court addresses below Plaintiffs' Motion to file Third Amended Complaint, and therefore, need not repeat the analysis here. In so far as Plaintiffs raise additional allegations within their motion for Temporary Restraining Order, the court finds that the analysis above, addressing Plaintiffs' substantive claims, is not altered by the additional allegations. Therefore Plaintiffs' Motion for Temporary Restraining Order is Denied.[5]

## V. MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Plaintiffs seek leave to file a third amended complaint on the basis that Defendants filed a Disclosure of Corporation Interests Certificate on February 15, 2008, which reveals two corporations that have business relationships with Defendant AT&T Yellow Pages. Plaintiffs seek to add these corporations as Defendants and to dismiss S.W.Bell Yellow Pages, R.R. Donnelly, Yellow Pages Publishing Corp., and Verizon Corp. As noted above, R.R. Donnelly was already dismissed as a Defendant.

> Rule 15 states that:
>
> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calender, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a).

---

[5]The Court additionally notes that Plaintiffs' request for a Temporary Restraining Order does not comply with the requirements articulated in Federal Rule of Civil Procedure 65. Fed. R. Civ. P. 65(b).

Plaintiffs have not alleged any additional facts that would support a cause of action against either of the Defendants that Plaintiffs seek to add, or against the existing Defendants. Furthermore, contrary to Plaintiffs' argument, the addition of Defendants whose citizenship is other than the state of Missouri does not create diversity sufficient to support jurisdiction under 28 U.S.C. § 1332. In order for diversity jurisdiction to be appropriate, all Plaintiffs must be diverse from all Defendants. Plaintiffs and Defendant AT&T are both Missouri residents, and therefore Diversity is destroyed. Therefore, the Court denies Plaintiffs' request to file third amended complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Temporary Restraining Order [doc. #2] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss [doc. #34] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Quash Plaintiffs' First Discovery Request [doc. #36] is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Extension of Time [doc. #37] is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Sanctions [doc. #41] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Order to Show Cause [doc. #46] is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Temporary Restraining Order [doc. #47] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Request for Third Amended Complaint by Interlineation [doc. #48] is **DENIED**.

Dated this 26th Day of February, 2008.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE